FILED'08 AUG 21 12:11USDC-ORP

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| THE GREENBRIER COMPANIES, INC., Oregon corporation, TRENTONWORKS LIMITED, a foreign corporation, and GREENBRIER LEASING LIMITED, a foreign corporation, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 07-1445-KI |
| vs. | ) ) ) | OPINION AND ORDER |
| AMERICAN DYNASTY SURPLUS LINES INSURANCE CO., a foreign corporation, and GREAT AMERICAN FIDELITY INSURANCE COMPANY, a Delaware corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Frank J. Weiss
Steven D. Olson
Robyn Ridler Aoyagi
Tonkon Torp LLP
1600 Pioneer Tower
888 S. W. Fifth Avenue
Portland, Oregon  97204-2099

    Attorneys for Plaintiffs

David E. Prange
Sean W. Carney
Prange Law Group, LLC
111 S. W. Fifth Avenue, Suite 2120
Portland, Oregon  97204

Robert M. Fineman
Duane Morris LLP
One Market, Spear Tower, Suite 2000
San Francisco, California  94105

> Attorneys for Defendants

KING, Judge:

This insurance dispute arose from a train derailment in British Columbia.  Plaintiffs
(collectively, "Greenbrier") allege that defendants (collectively, "Great American") breached the
insurance contract when Great American refused to reimburse Greenbrier for approximately
$315,000 in defense costs incurred after Greenbrier satisfied the policy's self-insured retention of
$250,000.  Greenbrier incurred the defense costs prior to Great American assuming the defense.
Before the court are Defendant's Motion for Summary Judgment (#312) and Plaintiffs' Motion
for Summary Judgment (#14).  For the reasons below, I conclude that Great American breached
the insurance contract.

## FACTS

Greenbrier manufactures and leases railcars.  Greenbrier purchased a general liability
policy ("Policy") from Great American effective January 1, 1997 to January 1, 2000.

The self-insured retention ("SIR") in the Policy provides:

SELF INSURED RETENTION

| 250,000 | Each Occurrence |
|---------|-----------------|
| 600,000 | Aggregate |

The limits of Insurance of this policy shall be excess of and not reduced by the Insured's payments of damages and/or defense costs under the Self-Insured Retention(s).

If the Self-Insured Retention applies to each claim, the Insured shall be responsible for and pay up to that retention all damages arising from each claim against the Insured to which this policy applies.

If the Self-Insured Retention applies to each occurrence, the Insured shall be responsible for and pay up to that retention all damages for which the Insured is liable in all claims and/or suits arising from one occurrence, regardless of the number of persons or companies making such claim(s) or properties sustaining such damages.

. . .

Defense costs are included within the Self-Insured Retention(s).

We will pay such defense costs only upon the Insured's satisfaction of the applicable retention by payment of damages and/or defense costs and otherwise in accordance with and subject to the terms, conditions, and limits of the policy.

. . .

Should any claim or "suit" to which this policy applies appears [sic] likely to exceed the Self-Insured Retention, no defense costs shall be incurred on behalf of us without our prior consent.

Curci Decl. Ex. A at 22-23.

A train containing Greenbrier railcars derailed in British Columbia on December 10, 1999. Greenbrier timely notified Great American of the derailment. On November 29, 2001, BC Rail Partnership filed suit in Canada against Greenbrier in connection with the derailment. In early 2002, Greenbrier tendered the suit to Great American.

The parties agree that Great American has a duty to defend after the SIR provision is satisfied.

On April 11, 2002, Great American wrote Greenbrier to acknowledge receipt of the Writ of Summons by BC Rail Partnership. The letter also stated, "Review of the Summons and the

Statement of Claim reveals that there are two occurrences and as such two separate claim files have been created with individual SIR retentions." Maughan Decl. Ex. 3 at 1. The letter also fully reserved rights for the insurer.

On May 9, 2002, Greenbrier wrote back to state its position that a single SIR applied. Greenbrier also asked Great American to confirm that it would not attempt to require Greenbrier to satisfy the SIR twice.

Great American responded on November 13, 2002 with a lengthier explanation of why it believed there were two occurrences and two SIRs. The letter also noted, "As a practical matter, it would appear we have a way to go before this issue becomes acute. Moreover, we should both be able to better evaluate the law as it may apply to the facts as the facts and the litigation develop." Maughan Decl. Ex. 5 at 2.

As of June 22, 2004, Great American still maintained that two SIRs applied.

On June 14, 2005, Greenbrier sent a two-page update on the case status. It added, "We also understand that Great American has not yet conclusively decided whether it will contend that multiple SIR's [sic] apply to this claim. . . . This analysis is not convincing." Curci Decl. in Supp. of Def.'s Opp'n Ex. A at 2.

On March 13, 2007, Greenbrier wrote to notify Great American that Greenbrier had paid $240,000 in defense costs and nearly $34,000 in expenses other than attorney fees. The letter, not received by Great American until March 23, closed:

> Accordingly, the SIR has been satisfied and Great American's duty to defend is now triggered.
>
> Please confirm your intention to assume the defense of this litigation. If you require any additional information, please let me know.

Maughan Decl. Ex. 7.

Great American responded on April 9, 2007:

> Greenbrier's letter, however, does not address Great American's prior advice that the information provided to Great American indicates that the underlying matter involves two alleged occurrences, not one. If two occurrences are involved, Great American's duty to defend would not arise until $500,000 in defense costs have been paid.

Maughan Decl. Ex. 8 at 1. Great American assumed that additional information was now available and asked Greenbrier for the factual basis of its assertion that only one alleged occurrence is at issue. Great American also asked for several types of documents related to the lawsuit. Greenbrier sent additional information on April 26, 2007.

On May 17, 2007, Great American wrote Greenbrier that based on the information just sent, Great American would not dispute Greenbrier's position that one SIR applies in the underlying action. Great American also agreed to assume the defense once Greenbrier provided sufficient information to allow Great American to meaningfully assess, investigate and participate. Great American also criticized the lack of communication and information it had received.

After some additional communication, Great American assumed the handling of Greenbrier's defense and the sole responsibility for paying the costs of the defense, as of June 2007. Great American also paid defense counsel invoices for time incurred in May 2007.

The parties dispute whether Great American has tried to settle the claims in this case. Great American swears that, as of July 2, 2008, Greenbrier rejected an offer by Great American to resolve the claims at issue in this lawsuit. Greenbrier swears that Great American has not made any tender to Greenbrier on its claims against Great American, as of June 13, 2008.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

Greenbrier contends that Great American breached its contractual duty to defend by refusing to pay the defense costs Greenbrier was forced to incur between the time it satisfied the SIR and the time Great American agreed to defend. Greenbrier contends that Great American is liable for all reasonable and necessary defense costs, in the amount of $315,332.19, prejudgment interest, and attorney fees and costs incurred in this action. Greenbrier also argues that the Policy's consent provisions are inapplicable because, until May 17, 2007, Great American consistently asserted that it would not pay any defense costs until Greenbrier paid $500,000 toward its own defense. According to Greenbrier, Great American would not give consent prior to that date because consent would have been inconsistent with Great American's fundamental position on the claim. Alternatively, Greenbrier argues that it should be excused from complying with the consent provisions because Great American failed to defend.

Great American argues that Greenbrier incurred amounts far in excess of the SIR without receiving prior consent from Great American, as required by the Policy. Based on its analysis of

the invoices submitted by Greenbrier, Great American contends that the majority of the amounts

reflect actual work performed prior to March 23, 2007, the date Great American received notice

that Greenbrier had already incurred amounts in excess of the $250,000 SIR. Great American

also makes a timing argument. It contends that when Greenbrier first advised in March 2007 that

it had exceeded the SIR amount, Greenbrier had not yet actually paid $250,000 in defense costs

but only had paid just over $243,195 as of March 15, 2007. Thus, Greenbrier argues that its

defense obligation was not triggered until Greenbrier made *payments* of $250,000.

> According to Great American:

>> Moreover, Great American did not breach its duty to defend. As noted in
>> the facts above, Great American agreed to defend Greenbrier, never refused to
>> accept Greenbrier's single occurrence position and never refused to pay defense
>> costs exceeding a single $250,000 SIR. As Plaintiffs' own June 14, 2005 letter
>> admits, Greenbrier understood that Great American had not made a determination
>> regarding the number of applicable SIRs and that it had not denied coverage, but
>> had only reserved coverage rights. Nor can Greenbrier legitimately claim that
>> Great American is somehow estopped from asserting that its consent was required
>> for any defense costs to be incurred on its behalf in excess of $250,000 since
>> Greenbrier's own position from the beginning of the underlying action was that a
>> single SIR applied and Greenbrier understood that Great American had not taken
>> a final position on the issue.

Defs.' Mem. of Law in Opp'n of Pls.' Mot. for Summ. J. at 16.

In reply, Greenbrier contends that by the time it paid out $250,000, its lawyers had

already performed a substantial amount of work that had not yet been billed. Greenbrier did not

receive November, January, and February invoices from counsel at McInnes Cooper until

March 15. It also argues that both before and after the March 13 notice, Great American took the

position that two SIRs applied so Greenbrier had no reason to believe that Great American would

assume the defense after a single SIR was satisfied. Greenbrier also notes that $159,332 was

incurred and paid after it notified Great American that the SIR was satisfied but before Great

American agreed to begin paying defense costs.

A breach of the duty to defend makes the insurer liable for the reasonable and necessary costs of the defense. <u>Northwest Pump v. American States Ins. Co.</u>, 144 Or. App. 222, 230, 925 P.2d 1241 (1996); <u>Mutual of Enumclaw Ins. Co. v. Gass</u>, 100 Or. App. 424, 428, 786 P.2d 749 (1999). The insured may also recover prejudgment interest based on the amounts paid to defense counsel as of the dates of the payments. <u>Klamath Pacific Corp. v. Reliance Ins. Co.</u>, 151 Or. App. 405, 419, 950 P.2d 909 (1997), <u>op. adhered to as modified on recons. on other grounds</u>, 152 Or. App. 738, 955 P.2d 340 (1998).

Great American very much overstates the inconclusiveness of its prior position when it now contends that Great American never refused to accept Greenbrier's position that a single SIR applied. The correspondence between the parties indicates that Great American insisted upon two SIRs from April 11, 2002 until May 17, 2007. Great American knew there was a dispute. It could have asked for additional information as the case progressed so it could reevaluate its position. Because Great American did not investigate, it is fortunate that Greenbrier decided to raise the issue yet again when the first SIR was satisfied. Because of its earlier stance requiring two SIRs, Great American cannot now rely on applying the prior consent provision of the Policy when satisfaction of the first SIR is imminent.

I am also unconvinced by Great American's timing argument. Greenbrier was sued and had to defend, schedule the defense work, and pay for the work as dictated by the timing of the litigation. Legal defense work is not incurred in $250,000 chunks and cannot stop while the insured and insurer argue further about the number of SIRs to be satisfied. I interpret the Policy to mean that Great American must pay for all reasonable and necessary defense costs in excess of the $250,000 SIR. Thus, Great American breached the duty to defend. The timing of the work

and payments is not relevant here.  I also award prejudgment interest as calculated in <u>Klamath</u> <u>Pacific</u>.

## CONCLUSION

Defendant's Motion for Summary Judgment (# 12) is denied.  Plaintiffs' Motion for Summary Judgment (#14) is granted.  Greenbrier is entitled to a declaratory judgment and an award of damages, although the amount is yet to be determined.  Counsel is directed to confer on the amount of damages to see if trial can be avoided.  I also decline to address the attorney fees issue under ORS 742.061 at this point because the record is not clear enough on any offer of settlement by Great American.  Greenbrier may move for attorney fees after Judgment is entered.

IT IS SO ORDERED.

Dated this _____ 20 th _____ day of August, 2008.

Garr M. King
United States District Judge